UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

WILSON RIVERA,

                Plaintiff,                    Case No. 1:14-cv-214

v.                                                     Honorable Robert J. Jonker

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

                Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1 et seq., and state law. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act (PLRA), PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Jones Bey. The Court will allow the action to proceed against Defendants Michigan Department of Corrections, Heyns, Finco, Martin, White,

Stephens, Wolfe, the Chaplaincy Advisory Council (CAC), and the unidentified members of the CAC ("Unknown Part(y)(ies)").

## Discussion

    I.    <u>Factual allegations</u>

Plaintiff Wilson Rivera is incarcerated by the Michigan Department of Corrections (MDOC) and housed at the Michigan Reformatory (RMI). Plaintiff purports to bring a class action on behalf of himself, prisoners James Goodman Bey and Ako Gilmore Bey, and other "Members of the Moorish Science Temple of America -1928 Grand Body/Divine National Movement (A Class of Moorish Moslems)." (Compl., docket #1, Page ID#1.) He sues the MDOC and the following MDOC employees, in their individual and official capacities: Director Daniel Heyns, Deputy Director Tom Finco, CFA Special Activities Coordinator Michael Martin, Chaplain Leroy D. White, Mail Room Clerk D. Stephens, and Regional Prison Administrator Ray Wolfe. He also sues the Chaplaincy Advisory Council (CAC)[1] and the CAC members "who recommended denial of [Plaintiff's] constitutional, federal and state law rights[.]"[2] (*Id.* at Page ID#14.) Finally, he sues Robert Jones Bey, Grand Sheik of the Moorish Science Temple of America, Inc., located in Washington, D.C.

Plaintiff alleges that he and prisoners Goodman Bey and Gilmore Bey are "Moorish American Moslems" of the "Moorish Science Temple of America-1928 Grand Body/Moorish Divine National Movement" (hereinafter, "MSTA-1928"). (*Id.* at Page ID#10.) On December 15, 2012,

---

[1] The CAC is identified on the cover page of the complaint and on the Court's docket as "Chaplain's Advisory Council."

[2] The individual members of the CAC are identified on the Court's docket as "Unknown Part(y)(ies)."

they presented to each Defendant a formal request for recognition of MSTA-1928 as a religious group, in accordance with MDOC Policy Directive 05.03.150, which provides, in pertinent part:

> H. A Chaplaincy Advisory Council (CAC), comprised of representatives of various faiths and denominations, shall serve in an advisory capacity to the Department regarding religious policy and programming. The CFA Special Activities Coordinator shall be a member of the CAC and ensure that all major religions are represented. Organization and membership of the CAC is governed by its constitution and bylaws. The CAC constitution and bylaws shall not conflict with any Department policy or procedure and are subject to the approval of the CFA Deputy Director.
>
> . . .
>
> J. The Department recognizes religious groups for the purpose of identifying those groups authorized to conduct group religious services and attend group religious activities and for identifying authorized personal religious property prisoners belonging to the religious group may possess . . . .
>
> . . .
>
> L. A prisoner or group of prisoners belonging to a religious group not recognized by the Department may request Department recognition of that group by submitting a written request to the Warden, FOA Regional Administrator, or designee, as appropriate. The request shall include information regarding the group's religious beliefs and practices. The Warden or FOA Regional Administrator shall ensure the all requests and supporting documents are referred to the CFA Special Activities Coordinator for review through the appropriate chain of command. The CFA Special Activities Coordinator shall present the material to the CAC for additional review, if needed. The CFA Special Activities Coordinator shall forward his/her recommendation, and that of the CAC if applicable, to the CFA Deputy Director for a final determination.
>
> M. The CFA Deputy Director shall make the final decision as to whether a religious group will be granted Department recognition and, if so, whether group religious services and activities and personal religious property will be allowed. The group shall be granted recognition if it is determined to be a bona fide religious group with beliefs and practices not adequately represented by an existing recognized religious group, based on any recommendation received from the CAC. The decision whether to allow the group to conduct group religious services and activities, and whether to allow personal religious property, shall be based on whether the practice of the religion or possession of the property item would pose a custody and security

> threat; the decision whether to allow the group to conduct group religious services and activities also shall be based on the number of prisoners identified as belonging to the religious group. All Regional Prison Administrators (RPAs), Wardens, and FOA Regional Administrators shall be advised of the final decision.

*Id.* (effective Sept. 20, 2007).

In their request, Plaintiff, Gilmore Bey and Goodman Bey also requested the right to practice their religion in the following ways:

> [T]o hold a Holy Day (Friday Moorish Jummah), Wednesday Moorish Koranic Class Study Group and Sunday School Class meetings, to receive our required and requested religious materials, emblems, Moorish Islamic Mohammedan Charms, Circle Seven Charms, Star and Crescent charms, Moorish Islamic prayer rugs, Moorish Dikr beads for prayer and meditation and reflection, Moorish Kuffee, Moorish American flag pins, Prophet Badge, religious wedding (obligation) bands, Moorish prayer oil (Attar), Moorish Ramadan (fasting) from October 1st through October 31st every year same dates and time, in Honor of our Great Prophet Ali of America; [to] be allowed to enroll into our University of the Moorish Science Temple of America–1928 (UMSTA) unmolested and receive any study lessons and booklets, video lessons from our Spiritual Guides and Teaches, our Grand Governors/Governess and Governors, Sheiks and Sheikesses, audio tapes, DVD's, and books approved by the [MSTA-1928] and representation from our National Leadership, from Our Supreme Grand Sheik, Dr. Ra Saadi El, Shaykh (Chief of Ministers), and all whom he and our Supreme Grand Body appoints, anoints, and consecrates . . . .

(Compl., Page ID#16.)  Defendants allegedly failed or refused to respond to the request.

Plaintiff complains that, because MSTA-1928 is not recognized by the MDOC, he is required to worship with a different Moorish American group, "Moorish Science Temple of America, Inc., (1934 Portion)" (hereinafter, "MSTA-1934"), which is the "only form of Islam" currently recognized by the MDOC. (*Id.* at Page ID#17.)  Plaintiff's group, MSTA-1928, disagrees with MSTA-1934 on several issues of religious doctrine and practice.  Plaintiff contends that requiring him to worship in a group service with members of MSTA-1934 results in "conflict with

[his] making Salat, [his] three conical (mandatory Moorish American Moslem Prayers), giving honors to [his] Leadership former and present, wearing the Moorish Kuffee, [and] giving the Friday (Jummau) Holy Day Khutba," among other things. (*Id.* at Page ID#19.)

Plaintiff further contends Defendant Stephens directed mail room staff to reject religious materials that Plaintiff received in the mail in December 2012[3] and May 2013.[4] In addition, Chaplain White allegedly discriminated against Plaintiff by directing mail room staff to reject materials sent to Plaintiff from his religious organization,[5] refusing to process Plaintiff's book order for religious books,[6] and threatening or intimidating Plaintiff for refusing to "tear up" a "Religious Preference Form."[7] (Compl., Page ID#22.)

Plaintiff claims that Defendants' actions violated his rights under the First, Eighth and Fourteenth Amendments to the Constitution. In particular, he claims that Defendants have violated his right under the First Amendment to exercise his religion, and have improperly favored the MSTA-1934 group over his own, in violation of his right to equal protection under the Fourteenth Amendment. He also contends that Defendants have been deliberately indifferent to his religious rights, in violation of the Eighth Amendment. Plaintiff asserts that Defendants' actions give rise to claims under § 1983, RLUIPA and Michigan state law.

---

[3] Plaintiff filed a prisoner grievance about the rejection of materials from MSTA-1928 in December 2012 (Grievance No. RMI 1212-2136-28I, docket #1-1, Page ID#39). The grievance was denied.

[4] (*See* 5/1/2013 Notice of Package Mail Rejection, docket #1-1, Page ID#68.)

[5] Defendant White's conduct was the subject of Grievance No. RMI 1212-2135-27B, filed on December 17, 2012 (docket #1-1, Page ID#48).

[6] *See* Grievance No. RMI 1212-2175-15Z, filed on December 21, 2012 (docket #1-1, Page ID#54).

[7] *See* Grievance No. RMI 1212-2176-17D, filed on December 24, 2012 (docket #1-1, Page ID#61).

As relief, Plaintiff requests an injunction requiring the MDOC to recognize MSTA-1928 as a separate religious group and to allow members of that group to practice their faith in a distinct manner, including: attending religious meetings on "Friday Holy Day," attending "Wednesday Koranic Study Class," and celebrating "Moorish Islamic fast (Ramadan)" in the month of October. (Compl., Page ID##30-31.) The requested injunction would also order the MDOC to create a specific meal plan consistent with Plaintiff's religious practices, with the required "Moorish tea" during Ramadan, and to allow members of MSTA-1928 to have specific rugs, caps and oils for use in prayer. (*Id.* at Page ID#31.) He also requests a declaratory judgment that Defendants have violated his rights under federal and state law, as well as damages against each Defendant.

## I.   Representation of Others / Class Certification

Though Plaintiff identifies other inmates as plaintiffs in this action, he is the only person who signed the complaint. Plaintiff lacks standing to assert the constitutional rights of other prisoners. *Newsom v Norris*, 888 F.2d 371, 381 (6th Cir. 1989); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992). As a layman, Plaintiff may only represent himself with respect to his individual claims, and may not act on behalf of other prisoners. Thus, absent class certification, he may not bring claims on behalf of James Goodman Bey, Ako Gilmore Bey, or any other prisoners.

For a case to proceed as a class action, the Court must be satisfied on a number of grounds, including the adequacy of class representation. *See* Fed. R. Civ. P. 23(a)(4). It is well established that *pro se* litigants are inappropriate representatives of the interests of others. *See Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)); *see also Dodson v. Wilkinson*, 304 F. App'x 434,

438 (6th Cir. 2008); *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003); *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001); *Howard v. Dougan*, No. 99–2232, 2000 WL 876770, at *1 (6th Cir. June 23, 2000); *Ballard v. Campbell*, No. 98–6156, 1999 WL 777435, at *1 (6th Cir. Sept. 21, 1999); *Marr v. Michigan*, No. 95–1794, 1996 WL 205582, at * 1 (6th Cir. Apr. 25, 1996). Accordingly, because Plaintiff is an incarcerated, *pro se* litigant, the Court finds that he is not an appropriate representative of a class. Therefore, the Court will deny class certification. Plaintiff may proceed in this action only with respect to claims that pertain to himself.

      II.    <u>Immunity</u>

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity in § 1983, *see Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court, *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). The Sixth Circuit has specifically held that the MDOC is absolutely immune from a suit under § 1983, because it is an "arm" of the State of Michigan. *See, e.g.*, *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the MDOC) is not a "person" within the meaning of § 1983. *See Lapides*

*v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Consequently, Plaintiff's § 1983 claim against the MDOC must be dismissed.

Plaintiff also seeks declaratory and injunctive relief as well as damages for alleged violations of RLUIPA. Although that statute permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc–2(a), a claim for monetary damages against the State of Michigan is not available under RLUIPA. In *Sossamon v. Texas*, ––– U.S. ––––, 131 S.Ct. 1651 (2011), the Supreme Court held that RLUIPA did not abrogate sovereign immunity under the Eleventh Amendment. Thus, Plaintiff's RLUIPA claim for monetary damages against the MDOC and Defendants Heyns, Finco, Martin, White, Stephens, and Wolfe in their *official* capacities are barred by sovereign immunity. *See Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) (holding that the Eleventh Amendment bars RLUIPA claims for money damages against states and state employees in their official capacities).[8] Consequently, the latter claims will be dismissed.[9]

### III. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

---

[8] As noted by the Sixth Circuit, it has not ruled on whether damages are available under RLUIPA against government defendants in their *individual* capacities. *Selby v. Caruso*, 734 F.3d 554, 561 (6th Cir. 2013) ("[O]ur court has not ruled on whether RLUIPA authorizes a prisoner to pursue damages against prison officials who are sued in their individual capacities . . . .") (citing *Heard v. Caruso*, 351 F. App'x 1, 13 n.5 (6th Cir. 2009)). Every other appellate court that has addressed the issue, however, has held that such relief is not available. *See, e.g.*, *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013); *Stewart v. Beach*, 701 F.3d 1322, 1334-35 (10th Cir. 2012); *Sharp v. Johnson*, 669 F.3d 144, 154-55 (3d Cir. 2012)*; Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 327-28 & n.23 (5th Cir. 2009), *aff'd on other grounds*, 131 S. Ct. 1651 (2011); *Nelson v. Miller*, 570 F.3d 868, 889 (7th Cir. 2009); *Rendelman v. Rouse*, 569 F.3d 182, 188-89 (4th Cir. 2009); *Smith v. Allen*, 502 F.3d 1255, 1272-75 (11th Cir. 2007), *abrogated on other grounds by Sossamon*, 131 S. Ct. at 1651.

[9] At this stage of the proceedings, it is not clear whether the CAC is an arm of the State of Michigan, or whether its members are state officials. Thus, the Court does not address whether the CAC or its members are protected by immunity under the Eleventh Amendment.

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

### A. Defendant Jones Bey

Plaintiff sues Robert Jones Bey, who is the Grand Sheik or "head" of "Moorish Science Temple of America, Inc., (1934)." (*See* Compl., Page ID#15.) Defendant Jones Bey is not mentioned by name in any of the allegations of the complaint, though Plaintiff contends that he presented his request for recognition of MSTA-1928 to "each and every one of the defendants,"

which would include Defendant Jones Bey. (*See id.* at Page ID#16.) Thus, Plaintiff apparently claims that Jones Bey, like the other Defendants, failed or refused to respond to that request.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Plaintiff asserts in his complaint that Jones Bey acted under color of state law, but Jones Bey is identified in the complaint as a representative or employee of a corporation located in Washington, D.C. Thus, it appears that Jones Bey is a private party, rather than a government official. In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814. There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). Plaintiff has not presented any allegations by which Defendant Jones Bey's alleged conduct could be fairly attributed to the State of Michigan. Jones Bey is not alleged to have any connection to the MDOC, to the State of Michigan, or to any government entity capable of recognizing Plaintiff's request for recognition of MSTA-1928. Nor is Jones Bey alleged to have any responsibility for, or ability to change, Plaintiff's prison conditions. Thus, Plaintiff fails to state a § 1983 claim against him.

Plaintiff's RLUIPA claim against Jones Bey fails for similar reasons. That statute "protects institutionalized persons who are unable freely to attend to their religious needs and are

therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson,* 544 U.S. 709, 721 (2005). It does so by limiting the burdens that a *government* may place on a prisoner's free exercise rights:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a). In § 2000cc–2(a), RLUIPA provides a cause of action against a "government." *Id.* ("A person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government."). RLUIPA defines government, in relevant part, as "(i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and (iii) any other person acting under color of State law." *Id.* § 2000cc–5 (4)(A)(i)-(iii). As indicated *supra*, it appears that Defendant Jones Bey is not a government official, and Plaintiff has not presented facts to support his assertion that Defendant Jones Bey acted under color of state law, let alone that Jones Bey imposed a substantial burden on the exercise of Plaintiff's religion. Thus, Plaintiff does not state a claim under RLUIPA against Defendant Jones Bey.

Finally, though Plaintiff purports to assert claims under state law, the Court discerns no basis for such a claim against Defendant Jones Bey. Plaintiff's complaint concerns his conditions of confinement in an MDOC facility. Plaintiff does not allege any involvement by Defendant Jones

Bey in those conditions, or that Jones Bey has any authority to change them. Consequently, Defendant Jones Bey will be dismissed from this action for failure to state a claim.

### B. Other Defendants

At this stage of the proceedings, the Court finds that Plaintiff states a plausible claim against the other Defendants under § 1983 and/or RLUIPA. Consequently, the Court will allow the action to proceed as set forth herein against all Defendants other than Defendant Jones Bey.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Jones Bey will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). In addition, the Court will dismiss Plaintiff's claim under § 1983 against the MDOC. Also, the Court will dismiss Plaintiff's RLUIPA claims seeking monetary relief from the MDOC and Defendants Heyns, Finco, Martin, White, Stephens, Wolfe in their *official* capacities. The Court will order service of the remainder of the complaint against Defendants MDOC, Heyns, Finco, Martin, White, Stephens, Wolfe, and the CAC.[10]

An Order consistent with this Opinion will be entered.

Dated:    May 28, 2014              /s/ Robert J. Jonker
                                    ROBERT J. JONKER
                                    UNITED STATES DISTRICT JUDGE

---

[10] The Court does not have sufficient information at this time to order service on the unknown members of the CAC ("Unknown Part(y)(ies)").