UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILSON RIVERA,

    Plaintiff,

v.                                                     Case No. 1:14-cv-214
                                                       Hon. Robert J. Jonker

MICHIGAN DEPARTMENT OF
CORRECTIONS, *et al.*,

    Defendants.
                              /

**REPORT AND RECOMMENDATION**

        This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the Court on a motion for summary judgment filed by defendants Michigan Department of Corrections (MDOC), Daniel Heyns, Thomas Finco, Michael Martin, Ray Wolfe, Leroy White and Deanne Stephens (docket no. 24). Defendants' motion is unopposed.

    **I.**    **Background**

        The Court previously summarized the pertinent allegations in plaintiff's complaint as follows:

> Plaintiff Wilson Rivera is incarcerated by the Michigan Department of Corrections (MDOC) and housed at the Michigan Reformatory (RMI). Plaintiff purports to bring a class action on behalf of himself, prisoners James Goodman Bey and Ako Gilmore Bey, and other "Members of the Moorish Science Temple of America -1928 Grand Body/Divine National Movement (A Class of Moorish Moslems)." (Compl., docket #1, Page ID#1.) He sues the MDOC and the following MDOC employees, in their individual and official capacities: Director Daniel Heyns, Deputy Director Tom Finco, CFA Special Activities Coordinator Michael Martin, Chaplain Leroy D. White, Mail Room Clerk D. Stephens, and Regional Prison Administrator Ray Wolfe. He also sues the Chaplaincy Advisory Council (CAC) and the CAC members "who recommended denial of [Plaintiff's] constitutional, federal

and state law rights[.]" (*Id.* at Page ID#14.) Finally, he sues Robert Jones Bey, Grand Sheik of the Moorish Science Temple of America, Inc., located in Washington, D.C.

Plaintiff alleges that he and prisoners Goodman Bey and Gilmore Bey are "Moorish American Moslems" of the "Moorish Science Temple of America-1928 Grand Body/Moorish Divine National Movement" (hereinafter, "MSTA-1928"). (*Id.* at Page ID#10.) On December 15, 2012, they presented to each Defendant a formal request for recognition of MSTA-1928 as a religious group, in accordance with MDOC Policy Directive 05.03.150 ["Religious Beliefs and Practices of Prisoners"] . . . .

In their request, Plaintiff, Gilmore Bey and Goodman Bey also requested the right to practice their religion in the following ways:

> [T]o hold a Holy Day (Friday Moorish Jummah), Wednesday Moorish Koranic Class Study Group and Sunday School Class meetings, to receive our required and requested religious materials, emblems, Moorish Islamic Mohammedan Charms, Circle Seven Charms, Star and Crescent charms, Moorish Islamic prayer rugs, Moorish Dikr beads for prayer and meditation and reflection, Moorish Kuffee, Moorish American flag pins, Prophet Badge, religious wedding (obligation) bands, Moorish prayer oil (Attar), Moorish Ramadan (fasting) from October 1st through October 31st every year same dates and time, in Honor of our Great Prophet Ali of America; [to] be allowed to enroll into our University of the Moorish Science Temple of America–1928 (UMSTA) unmolested and receive any study lessons and booklets, video lessons from our Spiritual Guides and Teachers, our Grand Governors/Governess and Governors, Sheiks and Sheikesses, audio tapes, DVD's, and books approved by the [MSTA-1928] and representation from our National Leadership, from Our Supreme Grand Sheik, Dr. Ra Saadi El, Shaykh (Chief of Ministers), and all whom he and our Supreme Grand Body appoints, anoints, and consecrates . . . .

(Compl., Page ID#16.) Defendants allegedly failed or refused to respond to the request.

Plaintiff complains that, because MSTA-1928 is not recognized by the MDOC, he is required to worship with a different Moorish American group, "Moorish Science Temple of America, Inc., (1934 Portion)" (hereinafter, "MSTA-1934"), which is the "only form of Islam" currently recognized by the MDOC. (*Id.* at Page ID#17.) Plaintiff's group, MSTA-1928, disagrees with

> MSTA-1934 on several issues of religious doctrine and practice. Plaintiff contends that requiring him to worship in a group service with members of MSTA-1934 results in "conflict with [his] making Salat, [his] three conical (mandatory Moorish American Moslem Prayers), giving honors to [his] Leadership former and present, wearing the Moorish Kuffee, [and] giving the Friday (Jummau) Holy Day Khutba," among other things. (*Id.* at Page ID#19.)
>
> Plaintiff further contends Defendant Stephens directed mail room staff to reject religious materials that Plaintiff received in the mail in December 2012 and May 2013. In addition, Chaplain White allegedly discriminated against Plaintiff by directing mail room staff to reject materials sent to Plaintiff from his religious organization, refusing to process Plaintiff's book order for religious books, and threatening or intimidating Plaintiff for refusing to "tear up" a "Religious Preference Form." (Compl., Page ID#22.)
>
> Plaintiff claims that Defendants' actions violated his rights under the First, Eighth and Fourteenth Amendments to the Constitution. In particular, he claims that Defendants have violated his right under the First Amendment to exercise his religion, and have improperly favored the MSTA-1934 group over his own, in violation of his right to equal protection under the Fourteenth Amendment. He also contends that Defendants have been deliberately indifferent to his religious rights, in violation of the Eighth Amendment. Plaintiff asserts that Defendants' actions give rise to claims under § 1983, RLUIPA [42 U.S.C. § 2000cc-1 *et seq.*] and Michigan state law.
>
> As relief, Plaintiff requests an injunction requiring the MDOC to recognize MSTA- 1928 as a separate religious group and to allow members of that group to practice their faith in a distinct manner, including: attending religious meetings on "Friday Holy Day," attending "Wednesday Koranic Study Class," and celebrating "Moorish Islamic fast (Ramadan)" in the month of October. (Compl., Page ID##30-31.) The requested injunction would also order the MDOC to create a specific meal plan consistent with Plaintiff's religious practices, with the required "Moorish tea" during Ramadan, and to allow members of MSTA-1928 to have specific rugs, caps and oils for use in prayer. (*Id.* at Page ID#31.) He also requests a declaratory judgment that Defendants have violated his rights under federal and state law, as well as damages against each Defendant.

Opinion at pp. ID## 130-34 (docket no. 5) (footnotes omitted).

The Court denied plaintiff's request for class certification, dismissed all claims against defendant Robert Jones Bey, dismissed the § 1983 claim against the MDOC, and dismissed

3

plaintiff's claims for damages under RLUIPA against defendants MDOC, Heyns, Finco, Martin, White, Stephens and Wolfe in their official capacities. *See* Opinion (docket no. 5); Order for partial dismissal and partial service (docket no. 6). The Court ordered service on the remainder of the claims on defendants MDOC, Heyns, Finco, Martin, White, Stephens, Wolfe and the CAC. *Id.* All of the remaining defendants have been served except for the CAC.

In their present motion, defendants MDOC, Heyns, Finco, Martin, White, Stephens, and Wolfe seek summary judgment on all of plaintiff's claims except for four claims: (1) that defendant Stephens rejected plaintiff's incoming mail on December 10, 2012; (2) that defendant White refused to sign plaintiff's disbursement form to order a religious book; (3) that defendant White attempted to intimidate plaintiff into tearing up his Religious Preference form indicating membership in MSTA-1928; and (4) that defendant White improperly advised mailroom staff to reject plaintiff's incoming mail in December 2012.

**II.    Summary judgment**

**A.    Legal standard**

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

As discussed, defendants' motion is unopposed. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id.* at 405.

### III. Exhaustion of administrative remedies

#### A. Legal standard

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

#### B. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved,

6

then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

   **C.**  **Plaintiff's properly exhausted grievances**

MDOC records reflect that plaintiff filed five step III grievance appeals while incarcerated at RMI. *See* MDOC Step III Grievance Report (docket no. 25-3). Defendants concede that four of the grievances are properly exhausted and support the four claims which they excluded from their motion for summary judgment. First, in Grievance RMI-12-12-2135-27b ("2135"), plaintiff complained that defendant Stephens improperly rejected his incoming mail on December 10, 2012. *See* Grievance no. 2135 (docket no. 25-6).[1] Second, in Grievance RMI-12-12-2175-15z ("2175"), plaintiff complained that defendant White refused to sign his disbursement form to order a religious book. *See* Grievance no. 2175 (docket no. 25-4). Third, in Grievance

---

[1] The Court notes that the Step I grievance form is illegible. *See* Step I form (docket no. 25-6 at p. ID# 210).

RMI-12-12-2176-17d ("2176"), plaintiff complained that defendant White attempted to intimidate him into tearing up his Religious Preference form indicating membership in MSTA-1928. *See* Grievance no. 2176 (docket no. 25-5). Fourth, in Grievance RMI-12-12-2136-28i ("2136"), plaintiff complained that defendant White improperly advised mailroom staff to reject his incoming mail (religious material) in December 2012. *See* Grievance no. 2136 (docket no. 25-7).[2]

### D.  Grievance no. RMI-13-05-1061-15a ("1061")

Plaintiff also exhausted Grievance no. 1061, in which he sought to "appeal" Assistant Resident Unit Supervisor (ARUS) Marsh's May 23, 2013 decision to uphold the mail rejection of a religious publication. *See* Grievance no. 1061 (docket no. 1-1 at p. ID# 67). This grievance is irrelevant because ARUS Marsh is not a party to this action. Even if this claim was relevant, plaintiff did not properly exhaust it because he did not complete exhaustion prior to filing this action. *See* Compl. (docket no. 1); MDOC Step III Grievance Report at p. ID# 190; *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999) (a prisoner "may not exhaust administrative remedies during the pendency of the federal suit").

### E.  Plaintiff's remaining claims

There is no evidence that plaintiff properly exhausted any other claims against defendants White and Stephens. *See Jones,* 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Nor is there evidence that plaintiff properly exhausted *any* claims against defendants MDOC, Heyns, Finco, Martin, or Wolfe. *Id.* Accordingly, defendants' motion for summary judgment should be granted as to those remaining claims.

---

[2] The Court notes that the Step I grievance form is illegible. *See* Step I form (docket no. 25-7 at p. ID# 215).

### IV. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 24) be **GRANTED**.

I further recommend that defendants MDOC, Heyns, Finco, Martin and Wolfe be **DISMISSED** from this action.

I recommend that this action proceed on plaintiff's claims: (1) that defendant Stephens rejected his incoming mail on December 10, 2012; (2) that defendant White refused to sign plaintiff's disbursement form to order a book; (3) that defendant White attempted to intimidate plaintiff into tearing up his Religious Preference form indicating membership in MSTA-1928; and (4) that defendant White improperly advised mailroom staff to reject plaintiff's incoming mail in December 2012.

Dated: August 24, 2015          /s/ Ray Kent
                                RAY KENT
                                United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).